IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAETANO T. CENTOFANTI,<br><br>              Plaintiff,<br><br>     v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>              Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 07-467 (JBS)<br><br><br>**OPINION** |

**APPEARANCES:**

John Francis Pilles, Jr., Esq.
223 High Street
Second Floor Office
Mount Holly, NJ 08060
     Attorney for Plaintiff

Patrick G. Brady, Esq.
GIBBONS, PC
One Gateway Center
Newark, NJ 07102-5310
     Attorney for Defendant

**Simandle, District Judge:**

## I.    INTRODUCTION

     This matter is before the Court on Defendant's motion for summary judgment.  The Court heard oral argument on May 23, 2008 and reserved decision.  Because there is insufficient evidence in the record before the Court from which a reasonable jury could find that Defendant fired Plaintiff on account of Plaintiff's request for medical leave, the Court shall grant the motion for summary judgment in its entirety.

## II.   BACKGROUND

This case arises out of an employment relationship between Plaintiff, Gaetano T. Centofanti ("Plaintiff" or "Centofanti") with Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot").  Plaintiff was formerly employed at a Home Depot Store in Mesa, Arizona from December 1999 to June 2002, when he moved to New Jersey.  He then continued working for Home Depot at its store in Delran, where he was employed as an associate in the Electrical Department until store manager John Vazquez fired him on June 7, 2006.  Plaintiff claims that he was fired in violation of the FMLA and the New Jersey Law Against Discrimination ("NJLAD") and that Home Depot exaggerated his disciplinary infractions to avoid giving him the leave to which he was entitled.  The Complaint contains two substantive counts.  Count One is a claim pursuant to the Family Medical Leave Act ("FMLA") and Count Two is a claim pursuant to NJLAD that Defendant failed to reasonably accommodate Plaintiff's "handicap."  The Complaint contains one nonsubstantive count: a request for attorney's fees in Count Three.  Defendant moves for summary judgment on Counts One and Two, and thus, if the motion is granted the matter will be ended.[1]

---

[1]   Defendant also moves for summary judgment on any claim for punitive damages, which the Court need not address because Defendant is entitled to summary judgment on the substantive claims, thus mooting damages issues.

## A.    Disciplinary Incidents

As relevant to this case, Mr. Centofanti's troubles on the job began around the first day of March, 2006.  Plaintiff began receiving disciplinary notices related to his conduct prior to notifying his employer of his need for FMLA leave and continuing afterward.  Specifically, on March 9, 2006, Plaintiff was given a "counseling session" with Assistant Store Manager Kathleen Randall, who caught Plaintiff sleeping in the break room while he was on the clock on four prior occasions in one week.  (Mar. 9 Notice, Ex. 9 to Pilles Aff; Pl. St. of Facts ¶¶ 37-40.)

In mid-March 2006, sometime after March 10, 2006, Plaintiff advised Janine Schultz, Manager of Human Relations at the Delran Home Depot store, that he needed medical leave to undergo a total left knee replacement.  (Pl. Dep. at 356-57, 379, Ex. 1 to Pilles Aff; Pl. St. of Facts ¶¶ 25, 27, 28.)  Plaintiff informed Ms. Schultz that he would be out of work for three months beginning in July 2006.  (Pl. Dep. at 367; Pl. St. of Facts ¶ 29; Schoifet Note, Ex. 8 to Pilles Aff.)  According to Plaintiff, Ms. Schultz gave him additional forms to fill out with his doctor, which he did and returned to Ms. Schultz.  (Pl. St. of Facts ¶¶ 33-35.)

Plaintiff received his second disciplinary notice from Defendant on May 5, 2006.  (May 5 Notice, Ex. 10 to Pilles Aff; Pl. St. of Facts ¶ 42.)  This notice was issued to Plaintiff by Assistant Store Manager Corey Lilliston as a final warning for a

"respect violation." (Id.)  According to Plaintiff, on Friday, April 28, 2006, Lilliston approached him at the end of a work shift, after a day when Plaintiff was running late for a chiropractic appointment and his knee was causing him "irritating discomfort." (Pl. St. of Facts ¶¶ 46-47.)  Mr. Lilliston asked Plaintiff to organize merchandise in his department and return items to the shelves. (Lilliston Dep. at 16-17, Ex. 11 to Pilles Aff.)  Plaintiff claims Lilliston spoke to him in a belittling voice that antagonized Plaintiff into giving an "uncharacteristically rude" response. (Pl. St. of Facts ¶¶ 50-51.)  Although Plaintiff does not recall exactly what he said to Lilliston, he admits that when Lilliston tried to speak to him about the condition of the Electrical department, Plaintiff answered in "a loud voice." (Pl. Dep. at 296.)  There is a dispute as to whether customers and another co-worker could hear Plaintiff (compare id. at 297 with Lilliston Dep. at 22, Ex. 19 to Brady Aff.), but there is no dispute that he was on the sales floor during the store's open hours when this exchange occurred. Lilliston testified that Plaintiff "started yelling at me. . . something to the effect of young man, . . . don't tell me what to do . . . ." (Id. at 21-22.)  Afterward, Plaintiff "apologized for his outburst," (Pl. St. of Facts ¶ 54; Lilliston Dep. 29) and said at his deposition he "realized I shouldn't answer him the way I did," (Pl. Dep. at 298).  Plaintiff received a "final

4

warning" from Home Depot for this incident.

Just weeks later, on May 20, 2006, another incident occurred.  Store Manager John Vazquez observed Plaintiff punch in for work and then instead of going to his department, go into the break room, where he stayed for approximately ten minutes. (Vazquez Dep. at 91-93.)

When Plaintiff left the break room he walked directly to the Plumbing Department, rather than to his own department.  (Id. at 94-95.) According to Plaintiff, Vazquez mistakenly believed that Plaintiff was shopping for himself while he was on the clock. (Pl. St. of Facts ¶ 57; Pl. Dep. at 315) ("I was getting something for a customer and he didn't know that.").  Although Plaintiff admits he was on the clock, he claims he was attempting to find something for a customer who had been in the store previously and asked him for assistance. (Pl. Dep. at 315-20.)[2]

Vazquez approached Plaintiff while Plaintiff was in the Plumbing Department and asked why he was not in his assigned department.  There is a dispute about whether Plaintiff explained that he was looking for something for a customer, as he claims, but that dispute is not material because Plaintiff admits that

---

[2]  Plaintiff actually claims that the customer had been in the previous day.  Defendant has submitted Plaintiff's employment records, which show that Plaintiff was not working on that previous day.  Regardless, the Court assumes for purposes of this motion that Plaintiff was actually shopping for a customer and not himself, but, as Plaintiff concedes, that Vazquez did not know this.

Vazquez did not hear Plaintiff give that explanation and that Vazquez honestly believed Plaintiff was shopping for himself during his work shift.  (Pl. Dep. at 325-26.)[3]  Defendant claims this incident was the final infraction that caused Home Depot to terminate Plaintiff's employment.

   **B.   Termination**

   More than two weeks later, on June 7, 2006, Vazquez delivered the final notice of discipline to Plaintiff and informed him that he had been fired.  (June 7 Notice, Ex. 22 to Brady Aff.)  Corey Lilliston and the human resource manager then assigned to the store, Frank Giorgianni, were also present at that meeting.

   Plaintiff testified at his deposition that in addition to Schulz of human resources, he also informed the Electrical Department manager, Frank Sams, of his need for surgery and medical leave.  (Pl. Dep. at 280.)  In addition, Plaintiff gave

_____

   [3]  Defendant submitted evidence that Vazquez ordered Plaintiff to get back to his department, to which Plaintiff responded "in a minute."  Plaintiff then told another sales associate, "Watch this.  I'm going to get a cup of coffee now." (Hemmerle Aff. at ¶ 6.)  It is unclear whether these facts are genuinely in dispute.  Plaintiff does not deny them in his statement of facts, even though they are in Defendant's statement of facts (Def. St. of Facts ¶ 70), but in his deposition Plaintiff claimed that when told to, he returned to the Electrical Department without making further comments.  (Pl. Dep. at 326-27, Ex. 1 to Pilles Aff.)  Accordingly, the Court will assume, for purposes of this motion, that the altercation ended when Plaintiff was ordered to return to the Electrical Department and that Plaintiff did so without further comment.

6

conflicting testimony about whether he might have mentioned his
need for surgery to Vazquez, the store manager. (Pl. Dep. at 387-
98.)  Plaintiff also testified that "mostly all the management
knew about it" and "word just spread," (id. at 279-80) but there
is no evidence that these were facts in Plaintiff's knowledge
and, in fact, Plaintiff testified that he was just speculating:
"I guess I was just under the impression that they talk about
different things and that was probably brought up in the
conversation, I don't know."  (Id. at 398.)  Thus, there is no
evidence that Lilliston knew Plaintiff had an injured knee or
that he needed time off for surgery.

However, the Court assumes for purposes of this motion that
Vazquez, the store manager, did know of the request for medical
leave, viewing the facts in the light most favorable to
Plaintiff.  Plaintiff's response to interrogatories and his first
day of deposition testimony unequivocally stated that Plaintiff
informed only Frank Sams and human resources manager Janine
Schulz that he needed medical leave.  On the second day of
Plaintiff's deposition testimony, however, he testified that he
mentioned the surgery and need for medical leave to Vazquez.
There is no other evidence that Vazquez knew, when he disciplined
him on May 20, 2006 and fired him on June 7, 2006, that Plaintiff
had requested medical leave.  Analogizing Plaintiff's change in
deposition testimony to the sham affidavit doctrine, Defendant

argues that the testimony about Plaintiff informing Vazquez of the requested medical leave cannot create a genuine issue of material fact.  However, the Court finds that a reasonable jury could infer from the evidence in the record that Vazquez knew about the request for medical leave, and thus the Court assumes that he did, for purposes of this motion.

**III. MOTION FOR SUMMARY JUDGMENT**

**A.   Standard**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### B.   Family Medical Leave Act Claim

Defendant moves for summary judgment on the FMLA claim in Count One of the Complaint because, Defendant claims, there is no evidence of a prima facie case and Plaintiff cannot show

Defendant's legitimate reasons for termination were pretextual.

   1.   Retaliation under the FMLA

   The FMLA provides that "an eligible employee shall be
entitled to a total of twelve workweeks of leave during any
twelve month period" if the employee has a "serious health
condition that makes the employee unable to perform the functions
of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).
For purposes of this motion, there is no dispute that Plaintiff
was entitled to and requested FMLA leave.  It is "unlawful for
any employer to interfere with, restrain, or deny the exercise of
or the attempt to exercise" any FMLA rights.  29 U.S.C. §
2615(a)(1).  In Conoshenti, the Third Circuit Court of Appeals
held that an employee claiming that he was terminated for taking
FMLA leave must show "that (1) he took an FMLA leave, (2) he
suffered an adverse employment decision, and (3) the adverse
decision was causally related to his leave." Conoshenti v.
Public Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).
In this case, Plaintiff is alleging that he was fired not for
taking FMLA leave, but for attempting to do so.  The parties
agree that in this context, therefore, to make a prima facie
claim that Defendant violated the FMLA, Plaintiff must show that
he requested FMLA leave, that he suffered an adverse employment
action, and that the adverse employment action was causally
related to his request for leave.  (See Pl. Br. at 8, Def. Br. at

10

7.)   See also Hodgens v. General Dynamics Corp., 144 F.3d 151,
161 (1st Cir. 1998) ("To make out a prima facie case of
retaliation, Hodgens must show that (1) he availed himself of a
protected right under the FMLA; (2) he was adversely affected by
an employment decision; (3) there is a causal connection between
the employee's protected activity and the employer's adverse
employment action.").

The parties further agree that the McDonnell Douglas
framework developed for Title VII employment discrimination
claims applies to this FMLA claim.   See McDonnell Douglas Corp.
v. Green, 411 U.S. 792, 800-06 (1973).   Thus, once the plaintiff
has proved a prima facie case, the burden shifts to the employer
"to articulate some legitimate, nondiscriminatory reason for the
employee's [termination]."   U.S. Postal Serv. Bd. of Governors v.
Aikens, 460 U.S. 711, 714 (1983); McDonnell Douglas, 411 U.S. at
802.   The employer "must clearly set forth, through the
introduction of admissible evidence, the reasons for the
[employee's termination]" which show that Plaintiff was fired for
a legitimate reason unrelated to the exercise of FMLA rights. See
Aikens, 460 U.S. at 714.   If Defendant's evidence creates a
genuine issue of fact as to whether the termination was
legitimate, then the presumption of discrimination "drops from
the case" and the burden shifts back to Plaintiff, who must then
provide evidence that the employer's stated reason was in fact a

11

pretext for retaliating against her because he requested protected FMLA leave.  Id. at 715.  To obtain summary judgment at that stage, Defendant would have to show "that plaintiff could not raise an issue of fact regarding whether defendant's proffered explanation was pretextual." Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

      2.   Whether Plaintiff has Evidence of Prima Facie Case

        (a) *Defendant's Arguments*

     Defendant argues that no evidence exists from which a reasonable jury could find any causal connection between Plaintiff's request for medical leave and his termination from Home Depot and that, therefore, Plaintiff cannot establish a prima facie claim of FMLA violation.  Specifically, Defendant points out that Plaintiff concedes his first disciplinary notice could not be causally related to his request for leave because the discipline preceded the request.  That discipline arose from four incidents of sleeping on duty that Plaintiff did not contest.  Plaintiff also concedes that he shouted at his superior, Corey Lilliston, and thus that his second notice of disciplinary infraction was a more or less accurate account of events; the only dispute about the second incident involves whether customers in the store overheard Plaintiff's outburst, but that is not material, as Plaintiff's behavior occurred on the sales floor during regular store hours.  In addition, Plaintiff

12

has submitted no evidence that Corey Lilliston knew he had
requested a medical leave of absence.  As to the third
disciplinary notice, while Plaintiff quarrels with whether he was
actually shopping on the clock, he does not quarrel with the fact
that Vazquez thought that he was, and thus, was honestly
justified in disciplining him for doing so.  See Fuentes v.
Perskie, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the
employer's proffered reason, however, the plaintiff cannot simply
show that the employer's decision was wrong or mistaken, since
the factual dispute at issue is whether discriminatory animus
motivated the employer, not whether the employer is wise, shrewd,
prudent, or competent.").  Thus, according to Defendant, it is
undisputed that Home Depot had cause for disciplining and firing
Plaintiff and there is no evidence that it was the request for
leave, rather than this misconduct, that motivated Home Depot.

    Defendant further argues that the Court could reject
Plaintiff's belated assertion that on some occasion he informed
Vazquez of his need for medical leave.

                    (b) Plaintiff's Arguments

    In opposition, Plaintiff argues that a reasonable jury could
find causation by looking at the timing of his firing in relation
to his request for leave and the "antagonism" that followed his
request.  Specifically, Plaintiff argues that two disciplinary
actions occurring within three months after his leave request are

                               13

suggestive of causation, especially given his previous good
employment record.

Plaintiff also asserts, somewhat contradictorily, that his
evaluations deteriorated after a prior request for, and receipt
of, FMLA leave; that he noticed an increase in surveillance of
him after March 2006; and that the second disciplinary notice was
"unnecessary" because Lilliston did not even ask why he was
uncharacteristically angry.

Plaintiff does not address the fact that there is no
evidence that Lilliston knew he had requested leave.

       (c) *Plaintiff Has Not Provided Evidence of*
           *Causation*

Defendant is entitled to summary judgment because Plaintiff
has not provided sufficient evidence of a prima facie case under
the FMLA.  Specifically, there is insufficient evidence from
which a reasonable jury could find causation under the
circumstances of this case.  The three issues Plaintiff raised in
the briefing have no merit and a reasonable jury could not infer
causation just by the coincidence of timing, given the record in
this case.

First, the timing between the request for leave and the
negative discipline notices is not so close as to be suggestive,
especially in light of the facts that the discipline notices were
motivated by specific instances of misconduct that Plaintiff
admits, that the first occurred prior to the request for leave,

and that the second was issued by a supervisor (Lilliston) who, on the evidence before the Court, had no knowledge of the request.

Plaintiff requested medical leave sometime in March 2006 after March 10.  His first discipline notice, for sleeping on the clock on four occasions, came at least one day before the request for leave.  Thus, it is not evidence of causation.  This disciplinary notice also proves, affirmatively, that Plaintiff was not an unblemished employee who suspiciously received warnings only after invoking his FMLA rights.  Rather, the evidence shows that both before and after his request for leave, Plaintiff was disciplined for misconduct.  Plaintiff has submitted no evidence that he was treated differently than any other employees or that he was treated differently after he requested leave.  Moreover, there is no evidence that Defendant had any hesitation in granting the requested leave – it was not an issue.

Plainitff's second discipline notice came May 5, 2006 and related to an incident on April 28, more than a month after the request for leave.  Plaintiff was then fired on June 7, 2006, for the cumulation of incidents, the last occurring on May 20.

Although these latter two incidents occurred between when Plaintiff requested medical leave and the date on which he would have taken medical leave, the timing is not so suggestive as to

establish, on its own, a prima facie case of discrimination in violation of the FMLA, even viewing the facts in the light most favorable to Plaintiff.  This is especially so as there is no dispute that as to the April 28 incident, Plaintiff actually engaged in the misconduct for which he was disciplined and that as to the May 20 incident, Vazquez actually believed Plaintiff was shopping for himself on the clock.

Importantly, there is no evidence that any other employee behaved in a similar manner but was not fired.  A reasonable jury could not find, based on timing alone, that Plaintiff was fired because of his request for medical leave, under these undisputed facts.  And there is no other evidence, disputed or otherwise, that points to the request for leave as a motivation for the termination or discipline.

Second, it does not matter that Plaintiff believes his misconduct on the second occasion should have been excused, especially in light of the fact that Plaintiff has no evidence that Home Depot would excuse such misconduct by other, non leave-taking employees.  At oral argument, Plaintiff's counsel argued that a reasonable manager acting in good faith would have asked Plaintiff, with whom he allegedly had no problems before April 28, why Plaintiff was shouting.  Lilliston's failure to do so, counsel argued, is evidence from which a jury could find that Lilliston was acting in bad faith.  However, the lack of evidence

that Lilliston knew of Plaintiff's request for medical leave defeats this claim, even on Defendant's motion for summary judgment.  FMLA does not create a code for management behavior unrelated to matters of health and medical leave; even if Lilliston could have reacted more charitably to Centofanti's aggressive confrontation, nothing in the FMLA required him to do so.

Third, the evaluations of Plaintiff's work after his request for leave in 2002 do not establish evidence of a prima facie case.  There is no claim that Defendant's agents relied on these evaluations in deciding to discipline and terminate Plaintiff. Accordingly, they cannot provide evidence of causation. Plaintiff concedes that when he requested leave in 2002 due to a stroke, he received not only the leave to which he was entitled, but the accommodation of a fixed work schedule and the ability only to work during daylight hours, as he was no longer able to drive in the dark.  These accommodations were provided throughout Plaintiff's employment, without exception.

Further, Defendant supplied the record of Plaintiff's evaluations and rather than the deterioration Plaintiff baldly alleges, the evaluations instead show that Plaintiff was consistently evaluated as a knowledgeable, friendly employee, who did not keep his shelves adequately stocked or focus on the organization of his aisles.  Thus, the evaluations do not provide

17

evidence of a pattern of antagonism dating either to the prior request for leave or to the instant one.

Home Depot provided unrefuted evidence that its agents decided to terminate Plaintiff because of his disciplinary infractions.  The Court understands its obligation on Defendant's motion to construe the facts in the light most favorable to Plaintiff.  Here, there are no material facts in dispute. Plaintiff admits the incidents actually occurred and that as to the first two, that he was violating Home Depot's code of conduct, and as to the third that Home Depot honestly believed he was violating the code of conduct.  In addition, there is no evidence that Lilliston, the person who disciplined him on the second occasion, and issued him a final warning, knew Plaintiff had requested medical leave. (Lilliston Dep. at 43:18-20, Ex. 19 to Brady Aff.)

Plaintiff mistakenly argues that his discipline and firing present jury questions because a jury might not agree that he should have been disciplined as harshly as he was for his infractions.  These are not questions for the jury.  The legally relevant issue on this FMLA claim is whether Plaintiff can demonstrate that Home Depot fired him because he requested medical leave.  There being no evidence that Defendant or its agents disciplined or fired Plaintiff because of his request for leave, a reasonable jury could not find in favor of Plaintiff.

18

There is no genuine issue of fact that a jury needs to resolve as
to the prima facie case and the Court shall therefore grant the
motion for summary judgment as to the FMLA claim.

> 3.   Whether There is a Genuine Issue as to Pretext

Although the Court need not go further, assuming Plaintiff
had made out a prima facie case that his termination was causally
connected to Home Depot's decision to fire him, the Court would
then move on to determine whether there is evidence that Home
Depot had legitimate reasons for firing Plaintiff.  There is
clear evidence that it did – the three instances of misconduct
for which Plaintiff was warned and then eventually fired.  The
Court then shifts to the next step of the McDonnell Douglas
analysis: whether those reasons are mere pretexts.

On Defendant's motion for summary judgment on the pretext
prong, the Court can not grant summary judgment unless Home Depot
shows there is absolutely no way Plaintiff could raise an issue
of fact regarding whether the proffered explanations for firing
Plaintiff are pretextual.  See Jalil, 873 F.2d at 708.  On the
other hand, to survive summary judgment at this stage Plaintiff
cannot merely sit back, but must "point to some evidence, direct
or circumstantial, from which a factfinder could reasonably
either (1) disbelieve the employer's articulated legitimate
reasons; or (2) believe that an invidious discriminatory reason
was more likely than not a motivating or determinative cause of

the employer's action."   <u>Fuentes v. Perskie</u>, 32 F.3d at 764.

> In other words, because the factfinder may
> infer from the combination of the plaintiff's
> prima facie case and its own rejection of the
> employer's proffered non-discriminatory
> reasons that the employer unlawfully
> discriminated against the plaintiff and was
> merely trying to conceal its illegal act with
> the articulated reasons, a plaintiff who has
> made out a prima facie case may defeat a
> motion for summary judgment by either (i)
> discrediting the proffered reasons, either
> circumstantially or directly, or (ii) adducing
> evidence, whether circumstantial or direct,
> that discrimination was more likely than not a
> motivating or determinative cause of the
> adverse employment action.

<u>Id.</u> (citation omitted).

Plaintiff argues that the disciplinary actions taken by
Lilliston and Vazquez were pretextual because (1) Vazquez
conferred with Lilliston prior to Lilliston disciplining him and
(2) it is appropriate for a Home Depot associate to be outside
his department when he is helping a customer.  Evidence that
Vazquez and Lilliston spoke prior to the issuance of the
disciplinary notice would not tend to show pretext, given that
Plaintiff admits his misconduct on that occasion.  Further, as
Plaintiff's counsel conceded at oral argument, there was nothing
inherently suspicious about Lilliston, the Assistant Manager,
conferring with Vazquez, the store manager, conferring prior
Lilliston's issuance of a final warning.  There is no other
evidence from which a jury could conclude that in this case their

20

conference was suspicious.

Similarly, evidence that Plaintiff could have been outside his section under certain circumstances of assisting a customer is not evidence of pretext for the third disciplinary infraction, given that there is absolutely no evidence tending to show that Vazquez was aware Plaintiff was helping a customer. In fact, Plaintiff admitted in his deposition that Vazquez actually believed Plaintiff was shopping for himself, a clear violation of Home Depot's policies. Plaintiff admits no customer was present and that Vazquez did not hear Plaintiff's alleged explanation in the brief interchange.

In addition, it is significant that Plaintiff's first four instances of misconduct, sleeping on the clock, are not refuted, and those infractions are not pretextual. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes v. Perskie, 32 F.3d at 764. Accordingly, in this case, there is insufficient evidence from which a reasonable jury could find pretext and the Court would grant summary judgment to Defendant on Count One even if there was evidence of a prima facie FMLA claim.

21

C.    **NJLAD Claim**

Defendant also moves for summary judgment on the NJLAD claim in Count Two, arguing that Plaintiff cannot establish a causal connection between his request for leave and Home Depot's decision to terminate him and because Plaintiff cannot prove the reasons given for his termination were pretexts for retaliation.

Centofanti argues that Count Two alleges that he was discriminated against based on his handicap (actual or perceived) and that he was discharged in retaliation for requesting a reasonable accommodation.  See N.J.A.C. 13:13-2.5(b) (administrative regulations requiring reasonable accommodations).

> "The LAD does not specifically address reasonable accommodation, but our courts have uniformly held that the law nevertheless requires an employer to reasonably accommodate an employee's handicap." Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J. Super. 385, 396 (App. Div. 2002). Administrative regulations set out the specific requirements of the reasonable accommodation process mandated by the LAD. In brief, unless it would impose an undue hardship on the operation of the business, N.J.A.C. 13:13-2.5(b) requires an employer to make a "reasonable accommodation to the limitations of an employee . . . who is a person with a disability."

Potente v. County of Hudson, 187 N.J. 103, 110 (2006).  That regulation further explains, in relevant part, that there are no bright-line rules as to what constitutes a reasonable accommodation.

22

The determination as to whether an employer has failed to make reasonable accommodation will be made on a case-by-case basis.

    1. Under circumstances where such accommodation will not impose an undue hardship on the operation of an employer's business, examples of reasonable accommodation may include:

        i. Making facilities used by employees readily accessible and usable by people with disabilities;

        ii. Job restructuring, part-time or modified work schedules or leaves of absence;

        iii. Acquisition or modification of equipment or devices; and

        iv. Job reassignment and other similar actions.

    2. An employer shall consider the possibility of reasonable accommodation before firing, demoting or refusing to hire or promote a person with a disability on the grounds that his or her disability precludes job performance.

    3. In determining whether an accommodation would impose undue hardship on the operation of an employer's business, factors to be considered include:

        i. The overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget;

        ii. The type of the employer's operations, including the composition and structure of the employer's workforce;

        iii. The nature and cost of the

accommodation needed; and

    iv. The extent to which accommodation would involve waiver of an essential requirement of a job as opposed to a tangential or non-business necessity requirement.

N.J.A.C. 13:13-2.5(b).

    To succeed on a failure to accommodate claim, a plaintiff must show that it made the employer aware, if only in plain English, of the need for a reasonable accommodation for a disability and that the employer failed to engage in a search for an accommodation.

    Once such a request is made, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." . . . This process must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability. Once a handicapped employee has requested assistance, it is the employer who must make the reasonable effort to determine the appropriate accommodation.

    To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Tynan, 351 N.J. Super. at 400-01 (citations omitted).

    In addition, N.J. Stat. Ann. 10:5-12(d) prohibits employers

24

from firing employees in retaliation for opposing a failure to accommodate.

Like FMLA claims, NJLAD claims use the burden-shifting analysis articulated in McDonnell Douglas.  Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005).  "[I]n a discharge case, a plaintiff must prove that: (1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left."  Id. at 450.  "Procedurally, courts have recognized that the prima facie case is to be evaluated solely on the basis of the evidence presented by the plaintiff, irrespective of defendants' efforts to dispute that evidence."  Id. at 448.

New Jersey courts have emphasized that the burden in the prima facie NJLAD termination case is very slight; the Court assumes that he has likely met it in this case.

> All that is necessary [to show the employee was performing his job at a level that met the employer's legitimate expectations] is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination. Along with the remaining prongs of the prima facie case, that evidence is sufficient to support the conclusion that the plaintiff's claim of discrimination is plausible  enough to warrant promotion to the next step of the McDonnell Douglas test. That is not a heavy burden nor was it meant to be. . . .
>
> As we have indicated, only the plaintiff's evidence should be considered. That evidence

25

> can come from records documenting the
> plaintiff's longevity in the position at issue
> or from testimony from the plaintiff or others
> that she had, in fact, been working within the
> title from which she was terminated. Because
> performance markers like poor evaluations are
> more properly debated in the second and third
> stages of the burden-shifting test, they do
> not come into play as part of the second prong
> of the prima facie case. Thus, even if a
> plaintiff candidly acknowledges, on his own
> case, that some performance issues have
> arisen, so long as he adduces evidence that he
> has, in fact, performed in the position up to
> the time of termination, the slight burden of
> the second prong [of the prima facie case] is
> satisfied.

Id. at 454-55 (citations omitted).

Once Plaintiff has established a prima facie claim, the case does not automatically become one for the jury.  As with federal discrimination claims, the key is intent and McDonnell Douglas has two additional steps the Court must consider on summary judgment.

> The LAD prevents only unlawful discrimination
> against disabled individuals; it does not
> prevent the termination or change of
> employment of any person who "is unable to
> perform adequately the duties of employment,
> nor [does it] preclude discrimination among
> individuals on the basis of competence,
> performance, conduct or any other reasonable
> standards." Put another way, the LAD
> acknowledges the authority of employers to
> manage their own businesses.
>
> What makes an employer's personnel action
> unlawful is the employer's intent.

Id. at 446 (citations omitted).   Thus, "if the employer proffers

26

a non-discriminatory reason, plaintiff does not qualify for a jury trial unless he or she can "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 455-56. "To prove pretext, a plaintiff may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent." Id. at 450.

Home Depot has come forward with legitimate reasons for firing Plaintiff, even viewing the evidence in the light most favorable to Plaintiff, all as discussed above: an assistant manager found Plaintiff sleeping on the job four times, and disciplined him for it; Plaintiff later talked back, in a loud voice, to another assistant manager, who gave him a final warning; and the store manager then found Plaintiff out of his department during his shift and honestly believed that Plaintiff was shopping for himself on the clock.  Plaintiff has not pointed to any evidence from which a reasonable factfinder could disbelieve these reasons for termination or could believe that Plaintiff's request for leave or his "handicap" were motivating factors in his termination, especially as there is no evidence that Lilliston knew of the request for leave and the first

27

disciplinary action came before the request.  Accordingly, the Court shall also grant summary judgment on Count Two.  <u>See</u> <u>id.</u> at 456 (if Plaintiff's obligation to provide evidence of pretext is not met at this stage, Court can grant summary judgment).

## IV.  CONCLUSION

Because there is no evidence from which a reasonable fact finder could determine that Home Depot disciplined and fired Plaintiff on account of his request for medical leave or physical handicap, rather than because of his misconduct, the Court shall grant summary judgment to Defendant Home Depot on all claims against it.  An appropriate Order shall be entered.

**May 29, 2008**                         **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         U.S. District Judge